IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Amy Joyce Gunn Hoyt, formerly known as Amy Joyce Gunn Gould, individually, and as guardian *ad litem* and trustee for Simms Augustus Hoyt, formerly known as Simon Augustus Gould, a minor fifteen (15) years of age, and Raphael Augustus Hoyt, formerly known as Raphael Charles Augustus Gould, a minor under the age of fourteen (14) years), <br><br> Plaintiffs, <br><br> v. <br><br> Phoenix Life Limited and Scottish Provident Institution, <br><br> Defendants. | Civil Action No. 2:18-2759-RMG <br><br> **ORDER AND OPINION** |

This matter is before the Court on Defendant's Second Motion to Dismiss (Dkt. No. 18.) For the reasons set forth below, the Court grants the motion.

**I.  Background**

Plaintiff Amy Joyce Gunn Hoyt, individually and on behalf of two of her minor children, brought this case against Defendants Scottish Provident Institution ("SPI") and Phoenix Life Limited ("PLL") in the Charleston County Court of Common Pleas on August 14, 2018. (Dkt. No. 1-1.) Plaintiff alleges that the Defendants sold a life insurance policy (the "Policy") to Simon Gould, Plaintiff's ex-husband, in 1999,[1] and brings claims for breach of contract, estoppel and bad faith based on the Defendants' alleged failure to pay benefits after her ex-husband's death. (*Id.* at ¶¶ 66 – 142.) Plaintiff's ex-husband was a citizen of the United Kingdom, and the Policy provided

---

[1] Defendant SPI issued the life insurance policy, and Defendant PLL acquired the life insurance policy from SPI in 2009. (Dkt. No. 1-1 at ¶ 3.)

1

coverage in the amount of 1.2 million pounds.[2] (*Id.* at ¶ 7, Dkt. No. 6 at 6.) Plaintiff and her ex-husband moved to South Carolina in 2004. (Dkt. No. 1-1 at ¶ 10.) Plaintiff alleges that she had a vested ownership interest in the Policy no later than 2006 as part of a settlement agreement and a divorce decree from South Carolina family court. The Policy was also allegedly a part of a flexible gift trust, of which Plaintiff was a trustee and her children were beneficiaries. (*Id.* at ¶¶ 19 – 20.)

On October 10, 2018, Defendants removed the case to this Court. (Dkt. No. 1.) Shortly after, the Defendants moved to dismiss for lack of personal jurisdiction, arguing that they are both corporations based in the United Kingdom and have never transacted business or marketed services in South Carolina. (Dkt. No. 4 at 3 – 4.) In response, Plaintiff requested that the Court stay ruling on the motion to dismiss and order limited jurisdictional discovery. (Dkt. No. 6 at 6.) The Court granted the requested jurisdictional discovery. (Dkt. No. 14). As jurisdictional discovery is complete, Defendants now renew their Motion to Dismiss, arguing that the Court lacks personal jurisdiction over Defendants due to insufficient contacts with South Carolina and because the parties are bound by a forum selection clause requiring any disputes to be litigated in England. (Dkt. No. 18.) Plaintiff opposes the motion. (Dkt. No. 19).

## II. **Legal Standard**

The burden is on the plaintiff to establish personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). After jurisdictional discovery, a Plaintiff must prove personal jurisdiction by a preponderance of the evidence. *See Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475, 482 (D.S.C. 2016). *See also Brown v. Geha-Werke GmbH*, 69 F.Supp.2d 770, 774 (D.S.C. 1999) ("Although this court decided the issue of personal jurisdiction without an

---

[2] The Policy also included a forum selection clause stating that the Policy is subject to the jurisdiction of England, Wales, Scotland or Northern Ireland. (Dkt. No. 1-7 at 33.)

evidentiary hearing…the parties have engaged in jurisdictional discovery and offered evidence beyond the pleadings and affidavits…[therefore] Plaintiff must establish personal jurisdiction by a preponderance of the evidence.").[3]

To meet its burden to show personal jurisdiction, a plaintiff must show (1) that South Carolina's long-arm statute authorizes jurisdiction, and (2) that the exercise of personal jurisdiction complies with constitutional due process requirements. *See, e.g. Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Since South Carolina's long-arm statute extends to the constitutional limits of due process, the only inquiry is whether due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999); *S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128 (S.C. 1992).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). This can be met by showing either general or specific personal jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citations omitted). To assert general jurisdiction, a defendant's contacts must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014) (citations omitted). For a corporation, that traditionally renders them subject to general jurisdiction in its state of incorporation or principal place of business. *Id.* at 137.

To determine whether specific jurisdiction exists, the Court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the

---

[3] When resolved on written submissions without discovery, a plaintiff must make a "prima facie showing of a sufficient jurisdictional basis." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (citations omitted). In other words, the defendant must have "minimum contacts" with the forum, the cause of action must arise from those contacts, and the exercise of personal jurisdiction must be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 – 476 (1985). Courts evaluate the reasonableness of personal jurisdiction by considering "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). "Minimum contacts" and "reasonableness" are not independent requirements; rather, they are both aspects of due process, and thus "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477.

### III. <u>Discussion</u>

Plaintiff cannot show that personal jurisdiction exists here.[4] It is undisputed that Defendants are not based in the United States, are not registered or licensed to conduct business in the United States, have no officers or employees in South Carolina, and have never marketed their services in the United States. (Dkt. No. 1-4 at ¶¶ 8, 10, 26 – 40.) Defendant SPI was a Scottish Corporation with its principal place of business in Edinburgh, Scotland. (*Id.* at ¶ 37.) In 2009, Defendant Phoenix acquired the Life and Pension policies of Defendant Scottish (including the

---

[4] Based on the undisputed evidence, Plaintiff can neither make out the preponderance of the evidence standard now that discovery is complete, nor can Plaintiff make out a *prima facie* case.

4

Policy at issue here). (*Id.* at ¶ 9.) Defendant Phoenix is an English corporation with its principal place of business in Birmingham, England. (*Id.* at ¶ 2.) Instead of pointing to any business activities in South Carolina, Plaintiff argues the Court has jurisdiction based on the actions that occurred after the issuance of the Policy.[5]

The life insurance Policy here was issued in January 1999 to Simon Gould when he was living in Monaco but domiciled in the United Kingdom. (Dkt. No. 1-5.) Nowhere did the Policy reference the United States or South Carolina. Instead, Mr. Gould's residence is listed as Monaco, he lists his doctor as living in Beausoleil, France, and identifies an individual from Manchester, England, as his representative. (Dkt. No. 1-5 at 4 – 8, 11.) In August 2004, Plaintiff and Mr. Gould purchased a home on Sullivan's Island in South Carolina. (Dkt. No. 1-6.) No evidence has been submitted indicating that Defendants were notified at that time that Plaintiff and Mr. Gould had purchased a home in South Carolina. Plaintiff was not a party to the Policy.

In 2006, Plaintiff and Mr. Gould were divorced in South Carolina. The Family Court in Charleston County allegedly required Mr. Gould to continue paying the life insurance premiums and designate Plaintiff as a beneficiary of 50% of the death benefit as a trustee for their children. (Dkt. No. 19 at 3.) In order to comply with this Family Court order, Mr. Gould requested and received from Defendant SPI a company-branded form for creating a flexible gift trust ("FGT"). (Dkt. No. 19 at 4.) Using the FGT document, Mr. Gould set up a trust with himself as the settlor, listed as living in Monaco, and Plaintiff (for their children) as a trustee, listed as living in South Carolina. (Dkt. No. 19-2 at 1 – 8.) Two of their children, identified on the form as living in South Carolina, are listed as beneficiaries. (*Id.* at 4.) Importantly, while Defendant SPI provided the form to set up the trust for the Policy, it is not a settlor, trustee or beneficiary of the trust.

---

[5] Plaintiff concedes there is no general personal jurisdiction here. (Dkt. No. 6 at 2.)

5

In September 2006, after the divorce, Plaintiff began to communicate with Defendant SPI regarding the Policy and asked to be included on any communications regarding the Policy. (Dkt. No. 18-2 at 1.) Notably, Plaintiff's letter listed her return address as in South Carolina. (*Id.*) Defendant SPI wrote back to Plaintiff at her South Carolina address. (*Id.* at 5 – 6.) In response to further communications, including telephone calls to inquire about the Plan, Defendant SPI and ultimately PLL wrote additional letters to Plaintiff in South Carolina. From 2010 through 2018, Defendant PLL had multiple communications with Plaintiff via phone, fax and mail regarding the Policy. (Dkt. Nos. 18-1; 18-6; 19-1.) Most were in response to inquiries by Plaintiff related to the Policy and payments of premiums, though some seem to be notices sent to Plaintiff regarding the Policy. (Dkt. No. 18-6.) Mr. Gould passed away on December 9, 2017.[6] The Policy allegedly lapsed in January 2014 because of non-payment of the premiums by Mr. Gould. (Dkt. No. 18-5 at 7.) Plaintiff filed a death claim on the Policy, yet Defendant PLL denied the claim via fax to Plaintiff as the policy lapsed. (*Id.*)

There are three reasons why Plaintiff fails to make out personal jurisdiction here. First, all of the alleged contacts with South Carolina were unilaterally initiated by Plaintiff or Mr. Gould. Second, regardless of the nature of the contacts, the contacts themselves do not demonstrate that Defendants "purposefully availed" themselves of the benefit of conducting activities in South Carolina. Finally, Plaintiff's focus on the trust is misplaced as the case turns on jurisdiction over the Defendants based on the Policy, rather than over the trust or its trustees and beneficiaries.

The contacts Plaintiff identifies here were all unilaterally initiated by Plaintiff or her ex-husband, Mr. Gould. Namely, Plaintiff focuses on the fact that Defendant PLL mailed, called and

---

[6] There is no indication that Mr. Gould died in South Carolina, and Plaintiff has not asserted such. Instead, Defendants submitted documents dating through January 30, 2015 showing Mr. Gould's contact address as listed in Monaco or Hong Kong. (Dkt. Nos. 24-6; 24-9 – 24-13.)

faxed items to South Carolina. However, this was because Plaintiff had identified South Carolina as her address. Notably, Defendants SPI and PLL did not enter any agreements with any individual in South Carolina as Plaintiff was never a party to the Policy, and there is no evidence that Defendants ever had offices or performed any business in South Carolina. Instead, the only contract at issue, the Policy, involved a United Kingdom-based company ensuring the life of a United Kingdom domicile living in Monaco. The only reason why the Policy affects individuals in South Carolina is because Plaintiff and her children, third-parties to the Policy, moved to South Carolina after the issuance of the Policy. These types of unilaterally-initiated contacts cannot be the basis of asserting jurisdiction as they fail to demonstrate that Defendants took any action to "purposefully avail" themselves of conducting activities in the state. *See Walden v. Fiore*, 571 U.S. 277, 289, 134 S. Ct. 1115, 1125 (2014) ("This approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Transcon. Ins. Co. v. E. Steel Constructors Inc.*, No. CIV. CCB 07-2243, 2008 WL 2466558, at *5 (D. Md. June 10, 2008) ("Ultimately, it was only the act of a third party…that resulted in an insurance contract negotiated and executed in Maryland. The law is clear that the unilateral action of a third party cannot create jurisdiction over another.").

Further, even if the contacts here were not solely unilateral, the nature of the contacts do not establish purposeful availment. Instead, Defendants contacts amount to nothing more than repeated communications with Plaintiff in South Carolina regarding an insurance policy wholly

7

unrelated to the state. These types of contacts, including repeated communications in state regarding an out of state contract, do not support personal jurisdiction. *See Le Bleu Corp. v. Standard Capital Grp., Inc.*, 11 F. App'x 377, 380 (4th Cir. 2001) (no jurisdiction where parties exchanged mail and phone calls, defendant's employees visited North Carolina twice, payment was mailed from North Carolina, and contract was signed in North Carolina); *Foster v. Arletty 3 Sarl*, 278 F.3d 409 (4th Cir.2002) (holding that no jurisdiction existed in South Carolina in suit regarding contracts signed by French citizens as "some fleeting communication by telephone and fax" between the plaintiff and defendants while the plaintiff was in South Carolina was "insufficient, standing alone, to establish jurisdiction").

The fact that Defendants issued and managed the Policy which ultimately included beneficiaries living in South Carolina similarly does not confer jurisdiction upon the Court where Defendants did not solicit or sell insurance knowing it would affect individuals in the state and Plaintiff was not a party to the Policy.[7] *See KCHM, Inc. v. Mid-Continent Cas. Co.*, 264 F. Supp. 3d 697, 702 (E.D.N.C. 2017) (finding not jurisdiction in North Carolina where insurance policy was "issued in Oklahoma to an Oklahoma corporation" covered accident took place in West Virginia, Plaintiff "is not the policyholder and is named only as a conditional additional insured on the subject policy[,]" Plaintiff did not negotiate the terms of the policy and Defendant had no office and transacted no "significant activities" in North Carolina). *See also Hough v. Hough*, No. 6:06 CV 00045, 2007 WL 1170701, at *2 (W.D. Va. Apr. 17, 2007) ("there is a distinction between soliciting the life insurance business of a citizen of a different state who then dies without moving and becoming a trustee for a beneficiary who later moves to a different state. The solicitation of

---

[7] Further, there is also no indication that the covered event, Mr. Gould's death, occurred in South Carolina.

business is precisely what is meant by 'purposeful availment.' Here...the connection to Virginia is the result of unilateral action by Plaintiff, over which Defendant had no control and which therefore cannot constitute purposeful availment on his part.").[8]

Finally, Plaintiff's focus on the trust is misplaced. Defendant SPI's action regarding the trust solely relates to providing a form requested by Mr. Gould and allegedly recording receipt of a trust deed for the Policy. Neither Defendant is a settlor, trustee or beneficiary. Plaintiff cites *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228 (1958), however, the issue presented by the Plaintiff is not whether the Court has jurisdiction over the trust or its settlors, trustees or beneficiaries. *See Hanson*, 357 U.S. at 254 (holding no jurisdiction over nonresident trustee or over trust where situs of property was out of state). Instead, as the Court is asked to adjudicate issues related to the non-payment of benefits under the Policy, the issue is whether the Court has jurisdiction over the Defendants as parties to an insurance Policy issued in the United Kingdom to an English domicile living in Monaco. The answer, for the reasons listed above, is no.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants Phoenix Life Limited and Scottish Provident Institution's Motion to Dismiss (Dkt. No. 18).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April 8, 2019
Charleston, South Carolina

---

[8] Plaintiff also identifies *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 78 S. Ct. 199 (1957) as relevant. However, in *McGee*, the Supreme Court found California had jurisdiction where defendants' predecessor sold life insurance to a resident of California, defendant reinsured plaintiff while he was in California, and plaintiff died in California. Here, the Policy was not issued in South Carolina, Defendants did not have any knowledge they would be providing coverage in South Carolina, and there is no indication that Mr. Gould died in South Carolina.

9